OF THE STATE OF ARKANSAS. 583

Term, 1857.]                    King et al. vs. Payan & Co.

## KING ET AL. VS. PAYAN & CO.

The jurisdiction of Courts of Chancery to enforce the remedy by garnishment or sequestration, is not divested by the statute conferring jurisdiction in such case, upon Courts of law. The remedy by judicial garnishment, under the statute, and the proceeding in equity having the same effect, are concurrent.

No proceeding can be had, either at law or in equity, by way of garnishment (except upon the statute of attachments) until after judgment has been rendered at law against the original debtor; and so, upon a bill in equity against the debtor and a garnishee, the Court would have no jurisdiction unless it appeared that the complainant had obtained judgment against his debtor.

Where a defendant submits to answer a bill in equity without reservation, and without exception to the jurisdiction of the Court, he will not be permitted to make that objection, for the first time, in this Court. (*Mooney vs. Brinkley*, 17 *Ark.*)

The answer of a defendant, admitting the indebtedness originally, as charged in the bill, but alleging its payment, if responsive to the allegations and interrogatories, is at least prima facie evidence for the party making it, if not absolute proof of the facts stated, so as to require the usual countervailing proof in cases necessary to outweigh an answer in chancery.

*Appeal from the Circuit Court of Marion county in Chancery.*

The Hon. BEAUFORT H. NEELY, Circuit Judge.

D. C. WILLIAMS for the appellants.

The claim was a plain money demand, upon which the appellees could have recovered judgment at law, and have issued their writ of garnishment against appellant, and thus have reached his indebtedness. *Hempstead & Conway vs. Watkins,* 1 *Eng.* 317; 1 *Story's Eq. Jur.,* sec. 61, *p.* 49.

The appellees had no right to a decree against the appellant in this case until they had recovered judgment against him and issued an execution and it returned *nulla bona. Duberry vs. Clifton, Cook R.* 338; *Beek vs. Burdit,* 1 *Paige* 305; *Hendrix vs. Henderson,* 2 *J. Ch. Cas.* 294.

Upon the merits of the case the decree was wrong as to Owens. Every allegation in the bill, that could have the least tendency to subject him to liability, is fully met and answered; and the bill is not sustained, nor the answer contradicted by any evidence.

Mr. Justice HANLY delivered the opinion of the Court.

This was a bill brought by the appellees against the appellants and William Coker and William C. Mitchell, in the Marion Circuit Court in chancery. The substance of the bill, as far as is material, is as follows: That the appellees are merchants and co-partners in the city of New Orleans; that, as such, they sold and delivered to the appellant, King, merchandize to the amount of ten hundred and eighty-five 66-100 dollars, for which King, the appellant, made, executed and delivered to them his promissory note, bearing date 19th April, 1854, payable twelve months from date, with interest at 8 per centum per annum after maturity, which said note was exhibited with the bill, and asked to be taken and considered as a part thereof; that at the time of the exhibition of the bill, the note remained wholly unpaid and due the appellees; that a short time after King, the appellant, purchased the goods in question from the appellees, he brought them to Arkansas and sold them colorably to the appellant, Owens, with the view and intention of hindering and delaying the appellees and others, his creditors, in the collection of their just demands and debts against him; that to accomplish this the more effectually, the appellant, King, put all his property, consisting of personal and real estate and choses in action, into the hands of divers persons besides the appellant Owens; that appellees are uninformed as to the kind, value or amount of property so disposed of, and of the names of the persons implicated therein; that the appellant King, pretends to be possessed of no property whatever, and declares his utter inability to pay the debt due to the appellees; the bill charges that, if the sale from King to Owens of the merchandize bought of them, was not colorable and fraudulent, intended to hinder and delay creditors in the collection of their

just debts against King, the appellant, Owens, still owes and is indebted to King in the amount of the value of the merchandize so bought; say, in the sum of fifteen hundred dollars: that beside the amount thus due from Owens to King, the appellant, Owens, has in his hands or possession, property or choses in action belonging to King, which he holds in secret trust for him to enable him to accomplish his designs to hinder and delay his creditors to collect their debts: that the appellees have no means of ascertaining or knowing the facts aforesaid, except by discovery from the appellants. The bill prays a discovery upon all the facts charged; and that appellants be required to answer immediately as to such facts, setting forth names, dates, amounts, etc.: the special relief demanded against appellants is, that they be decreed to pay appellees the amount of the debt, with interest, etc.

Separate answers were made by each of the appellants. King admitted his indebtedness to appellees as stated in the bill; that he had sold his stock of merchandize, including the goods bought of appellees, to his co-appellant, Owens; states how Owens had paid him for the same; answers positively that Owens did not owe him one cent, but, on the contrary, that the balance was in favor of Owens; that he owed Owens over one hundred dollars on a fair settlement and adjustment of accounts; denied that he had sold to Owens for the purpose of hindering or delaying his creditors; admits his insolvency and declares that he was possessed of no property whatever, except a "homestead," and that he knows of no one who holds any property in secret trust for him.

The answer of Owens admits the purchase of the merchandize from King; states its amount and value; that a portion of the amount was paid at the time of the purchase; that the rest and residue was paid at divers and different times between then and the commencement of the suit; that he did not then owe King a cent, but, on the contrary thereof, that King was then indebted to him over one hundred dollars; denies that his purchase from King was colorable, or intended by him to aid

King in hindering or delaying his creditors, if such was really and truly his design in making the sale to him; that if such was the design on the part of King, he, Owens, was not aware of the fact at the date of his purchase, or when payment was made to him in the manner stated; denies broadly and flatly that he has or holds any property, moneys or effects in his hands or possession, colorably, or under a secret trust in favor of King, and, in a word, denies the whole bill and the allegations therein, except as above shown, so far as they pertain to him.

The cause was put to issue by replications to the answers and was set down for hearing on the bill, the answers, replications and proof to be taken. After the cause was taken up for hearing, it was agreed by the parties that the testimony of one witness might be taken *ore tenus;* which it seems was done by consent of the Court. This evidence was reduced to writing and filed in the cause, but does not bear upon the merits of the case, in the view that we shall take of it.

On this state of facts, the Court below decreed in favor of the appellees against both the appellants for the amount of their debt exhibited with their bill, and interest thereon from its maturity at 8 per centum per annum, and directed that the same might be enforced by execution as upon a judgment at law. From this decree, both appellants appealed, upon which the cause is now pending in this Court.

It is insisted that the bill of appellees should have been dismissed at the hearing, for want of equity.

Two points are relied on by the appellants, upon which to reverse the decree rendered in this cause: 1st. That the remedy of the appellees was complete at law, and a Court of Chancery had no jurisdiction. 2d. That upon the merits of the case the decree was wrong.

1. There can be no doubt, we think, but that the appellees had a remedy at law, so far as the appellants are concerned, but whether the remedy existing at law was as complete and effective as that which might be afforded by a Court of Equity, in case of jurisdiction in that Court to take cognizance of the suit, of which we will hereafter enquire, is not so clear or cer-

tain.  We are rather inclined to the opinion that such was not the case.  The remedy by attachment was not open to the appellees, for the reason that the bill does not show that any of the grounds existed authorizing the issuing of an attachment against the appellant, King.  If no attachment could have been issued against King, no garnishment against the other appellant, Owens, could have been issued until the appellees had sued King at law, and obtained judgment against him; for a judicial garnishment, under our statute, is only authorized after judgment against the debtor.  *See Dig. ch.* 78, *p.* 558–'9.  By the statute, the writ of garnishment does not operate upon the debt due by the garnishee to the judgment debtor, or the credit or effects in his hands, except from the time it is executed on him under the law, so that he may pay the debt, or turn over the property or effects to the judgment debtor at any time before the writ of garnishment is served on him.  But, if a Court of Chancery has jurisdiction in such case for any purpose, so as to authorize that Court to entertain the suit, such would not be the privilege of the person standing in the suit in the relation of a garnishee in a proceeding under our statute to which we have referred; for so soon as the subpœna in Chancery should be served on him, he would be fixed with notice of the matter of the bill, and the debt or effects in his hands would be charged, dependant upon the result of the suit.  He could not pay the debt, or dispose of the effects to the prejudice of the complainant; in doing so, he would be held to do so at his peril, as in other Chancery causes, where the doctrine of *lis pendens* is applied.  But this is rather a matter of argument or speculation, than a judicial determination of the question at hand.  To accomplish this, it will be necessary to lay down some of the rules or principles by which Courts of Chancery are ordinarily governed in the assumption and maintenance of the jurisdiction which rightfully, or by concession, belongs to them.

Judicial garnishment at law is a creature of the statute which authorizes it; but the remedy by garnishment or sequestration, is one which has been exercised by the Courts of Chancery, we may say, immemorially, or at least from a very remote period.

The remedy by judicial garnishment under the statute in this State, and by the proceeding in equity, having the same effect, are concurrent. The conferring the jurisdiction or power upon Courts of law did not divest the ancient jurisdiction, which had been exercised by the Courts of Chancery, anterior to the passage of the act in question; hence, this Court, in the case of *Walker vs. Bradley*, 2 *Ark. R.* 578, have said that: "The proceedings in this case," (which was one of judicial garnishment) "are partly according to the practice of Courts of Chancery, and partly according to the practice of Courts of law." If the party being entitled proceed against a person, liable as a garnishee, whether he proceeds at law or in equity, he must do so under the circumstances prescribed by the statute. The fact is, the statute, so far as the remedy in equity is concerned, is but declaratory of what the law was before its passage, as administered by the Courts of Chancery. No proceeding can be had, therefore, either at law or in equity by way of garnishment, except, possibly, in the solitary instances authorized by our attachment statute, until after judgment has been rendered at law fixing the indebtedness of the debtor. When that is done, the two forums are alike open to the demand of the party seeking the remedy,—in law, by proceeding according to the statutory requirements; in equity, by adopting the course prescribed by the ancient precedents, and the rules adopted by the Judges who have adorned the benches of those Courts. In the case before us, if the jurisdiction exercised by the Chancellor can be sustained or upheld upon any pretext whatever, it must be in consequence of the reason which we have urged above, and we have shown that the jurisdiction cannot be maintained on that ground, for the reason that the bill, independent of the answers and proof, shows that no judgment at law had been rendered in favor of the appellees against King, the debtor, but, on the contrary, it is manifest from the face of the bill, that the proceeding was an original one, and independent of any other suit or proceeding whatever. If the proceeding could be upheld, it would be, virtually, doing indirectly what could not directly be done by a Court of Chancery; for we have shown that

the indebtedness of Owens, the appellant, to the other appellant, King, would be fixed from the time of the service of the subpœna upon him, so that he could not pay the debt to King, so as to discharge himself from the effect of the suit against him involving the question of indebtedness to King, which, by the bill, is asked to be appropriated to the payment of the debt due by him, King, to the appellees. It would be as effectual to the appellees in securing their debt against King, in the hands of Owens, as if the appellees had proceeded by injunction to restrain him from paying over his indebtedness, setting up the same facts which the bill charges in this instance.

It is well established that a creditor at large, or before judgment, is not entitled to the interference of a Court of Chancery, by injunction, to prevent the debtor from disposing of his property in fraud of his creditor. See *Wiggins vs. Armstrong*, 2 *J. Ch. R.* 144, citing *Angell vs. Draper*, 1 *Verm.* 399. *Shirley vs. Watts*, 3 *Atk.* 200. *Bennett vs. Musgrave*, 2 *Ves.* 51. *Balch vs. Wartall*, 1 *P. Wm.* 445. *Mitford* 115. *Cooper Eq. Plead.* 149. See, also, 6 *Rand. R.* 190. *Meaux vs. Anthony et al.*, 6 *Eng.* 411.

In *Wiggins vs. Armstrong*, KENT, Chancellor, said: "The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and perhaps a fruitless and oppressive interruption of the exercise of the debtor's rights. Unless he has a certain claim upon the property of the debtor he has no concern with his frauds."

If it is the rule of equity jurisprudence, that a creditor at large cannot interfere with his debtor until he shall have established his title at law, we see no good reason why his remedy should be enlarged when the proceeding is against both debtor and a debtor to such debtor, not it is true by an injunction, but by a proceeding which is a virtual injunction as to both; for the restraint upon Owens in this case would be a virtual restraint upon King, as heretofore shown.

We hold, therefore, in this case, that upon the face of the

bill, as well as on the whole record before us, there is nothing
which could give to the Court below jurisdiction of the subject
matter, and as to the relief prayed. But the inquiry arises
whether, the appellants having omitted to avail themselves of
the want of equity in the bill, as well as the jurisdiction of the
Court over the subject matter of the suit, but submitting to an-
swer without reservation, those objections can be heard for the
first time in this Court.

In *Mooney vs. Brinkley*, 17 *Ark. R.* this Court, by ENGLISH,
CH. J., said: "The defendant having submitted to answer the
whole bill, and did not, by his answer, object to the jurisdiction
of the Court of Equity over any of the matters set up in the
bill, or otherwise demur for that cause, and having thus sub-
mitted the cause to the cognizance of the Court, it was too late
for him, upon the hearing, and it is too late now, to object to
the jurisdiction, unless the Court was wholly incompetent to
grant the relief which the complainant sought by the bill."
Citing *Ludlaw vs. Simonds*, 2 *Caine's Cases in Error* 40, 56.
*Underhill vs. Van Cortlandt*, 2 *J. Ch. R.* 369. *Hawley vs. Cra-
mer*, 4 *Cow. R.* 727. *Grandin vs. Leroy*, 2 *Paige Ch. R.* 509.

In *Underhill vs. Van Cortlandt*, cited by ENGLISH, CH. J., in
*Mooney vs. Brinkley*, KENT, Chancellor, said on the subject: "It
would be an abuse of justice if the defendants were to be per-
mitted to protract a litigation to this extent, and with the expense
that has attended this suit, and then, at the final hearing, inter-
pose this preliminary objection."

In the case at bar it does not appear from the record, that any
objection was interposed, at any time, questioning the jurisdic-
tion of the Court, whilst the cause was progressing in the Court
below. The question seems to have been made and urged for
the first time, by the counsel for the appellants, in this Court.
*We* may say, therefore, in the language of Chancellor Kent,
that it would be "an abuse of justice" to allow the objection
to prevail here.

Having thus disposed of the first point made by the counsel
for the appellants, and those incidentally growing out of it, as

they severally occurred to our minds, we will, therefore, proceed to consider and determine the only remaining one.

2. Is the decree, which was rendered by the Court below, warranted by the case made by the bill, the answers and replications, as to either or both of the appellants?

As to King, we think there can be no doubt of the fact. He admits his indebtedness to the appellees as charged, and by computation of the interest upon the amount, we find the sum decreed against him to be made up. The decree, therefore, as to King, will be affirmed.

But as to Owens the case is different. He admits the purchase of the stock of merchandize from the appellant, King, and in response to a question or interrogatory propounded in the bill, in which he was required to make the statement, he states that at the time of the purchase he paid a large part of the purchase money for the goods bought, and that since then and before the commencement of the suit against him, he paid the residue, and in conclusion, answers broadly and fully, that he was not indebted to King, in any amount, at the time of the commencement of this suit. We apprehend the answer made under such circumstances would be at least *prima facie* evidence for the party making it, if not absolute proof of the facts stated as to the payment, so as to require the usual countervailing proof in cases necessary to outweigh an answer in Chancery. See *Britt vs. Bradshaw*, at the present term; *Wheat et al. vs. Moss et al.*, 16 *Ark. R.* 241; *Green vs. Vardiman*, 2 *Blackf. R.* 328, *and the cases cited*. In this latter case, the Court say: " That the answer, so far as it is strictly such, being directly responsive to the bill, is to be taken as true. For where the bill requires a disclosure of such matters as may discharge the defendant, he is compelled to answer and disclose those matters; and if the disclosure amounts to a discharge, he is entitled to the full benefit of it." The Court below, therefore, having no proof before it to countervail the evidence afforded by the answer of Owens, was unauthorized to render the decree against him, for any amount whatever, as a debtor of King. There

being no proof of the purchase by Owens from King of the stock of merchandize, being fraudulent or colorable on the part of either King or Owens, but the reverse thereof as to Owens appearing by his answer, the Court below was unwarranted in decreeing against him on that account. The fact is, we are at a loss to conceive upon what ground, in point of fact or law, the Court below could have proceeded, to authorize the decree against Owens. We, therefore, hold the decree, as to him, erroneous and unwarranted. The decree is, consequently, hereby reversed, and the bill dismissed as to Owens, at the costs of the appellees in both Courts as to him.

The decree is affirmed as to King, at his costs as to himself in both Courts.

Let the judgment of this Court be so entered.

Absent, Hon. C. C. SCOTT.