PONDER *v.* JEFFERSON STANDARD LIFE INSURANCE COMPANY.

4-6067                                    143 S. W. 2d 1115

Opinion delivered October 28, 1940.

*Walter L. Pope* and *H. M. Trieber,* for appellant.

*Owens, Ehrman & McHaney,* for appellee.

Smith, J. At the time of his death, which occurred December 7, 1935, Dr. Edgar T. Ponder had in effect three life insurance policies issued by the Jefferson Standard Life Insurance Company in the aggregate amount of $15,000. The policies were all payable to his wife, Nora D. Ponder. After the death of the insured, the beneficiary widow submitted proof of the death of the insured, in which proof it was stated that the insured was born December 24, 1882, this date being the date of birth given in the applications for the insurance policies. Upon receipt of this proof the insurance company paid the full face amount of all three policies.

Within a few weeks after the payment had been made, the insurance company, hereinafter referred to as the company, learned that the insured was not born December 24, 1882, but was born some years prior to that date, either December 24, 1877, or December 24, 1878.

Each of the policies contained the following clauses:

"After this policy shall have been in force for two full years from the date hereof it shall be incontestable for any cause except for nonpayment of premium."

"The company will admit age upon satisfactory proof; otherwise, if age is not truly stated in the application, the benefits hereunder will be what the premiums paid would have purchased at the true age."

The policies were dated September 1, 1926 (for $3,000), January 15, 1928 (for ·$2,000), and June .23, 1928 (for $10,000). It is not questioned that the premiums had been paid. All the policies had, therefore, been in force for more than two years prior to the date of the death of the insured.

After having discovered the discrepancy as to the insured's age, the company instituted suit against Mrs. Ponder to recover the excess payments which had been made to her. The suit was filed in the chancery court, and a garnishment issued against the Hercules Life Insurance Company, which, at that time, was indebted to Mrs. Ponder on certain other life insurance policies issued by it on the life of Dr. Ponder in which Mrs. Ponder was the named beneficiary.

The complaint alleged that Dr. Ponder was older than his applications for the policies stated and the proof of his death had indicated, and that such erroneous statements of age were fraudulent on the part of both the insured and the beneficiary, and that in consequence of such fraud, or by mistake, the company had overpaid Mrs. Ponder, and was entitled to recover from her the difference between the face of the policies and the lesser amount of insurance which the premiums paid would have purchased, at the insured's true age.

Mrs. Ponder moved to dissolve the garnishment, on the ground that insurance money was not, under the statutes of this state, subject to garnishment; and she also moved to transfer the case to the circuit court. Both motions were denied, and she appealed to this court, where the judgment of the court below was reversed and the cause remanded with directions to sustain both motions. *Ponder v. Jefferson Standard Life Ins. Co.*, 194 Ark. 829, 109 S. W. 2d 946. Following the remand, the garnishment was dissolved, and the cause was trans-

ferred to the circuit court, where, by consent, it was tried by the court sitting as a jury.

The court rendered judgment for the company for $2,329.90, with interest at six per cent. from February 21, 1936, the date of payment, and also rendered judgment in favor of Mrs. Ponder for $324.59, with interest at six per cent. from December 21, 1937, on account of the garnishment, but credited the smaller sum on the larger, and final judgment was rendered in favor of the company for the difference, and this appeal is from that judgment.

The judgment is based upon the finding of fact that the insured was born December 24, 1878. The accuracy of the calculations as to the amount of insurance for which the premiums would have paid at this age is not questioned; but the reversal of the judgment is prayed upon the grounds: (a) that it was not sufficiently shown that the insured was born in 1878, and not in 1882 as stated in the applications for the insurance; (b) that the payment of the insurance was voluntarily made, and cannot be recovered for that reason; (c) that statements of the insured in his applications for the insurance, although false, are not admissible against the beneficiary; and (d) that the right to recover is defeated by the incontestable clause appearing in the policies, set out above.

Upon the first question, we have no hesitancy in saying that the testimony is legally sufficient to support the finding that the insured was not born in 1882, as stated in the applications for the insurance, but was, in fact, born not later than 1878.

The widow, in her proof of death, stated that her husband was born December 24, 1882. She did not testify at the trial, the explanation being made that she was physically unable to be present.

The attending physician, who had known the insured for twelve years, stated the age of deceased to be 54 years. The source of his information does not appear, and the physician did not testify at the trial.

The undertaker gave 52 as his answer to the question, "How old did the deceased appear to be?" But the undertaker did not testify at the trial, nor did any other witness who had any personal knowledge of the actual age of the insured.

Opposed to this was the following testimony. The application of the insured for license to practice medicine dated June 18, 1903, stated the applicant's age to be 25. If this statement were true, the insured was born, not in 1878, as found by the court, but in 1877.

The application for insured's marriage license was executed January 24, 1903, by insured's brother, and stated the insured's age, at that time, to be 25, which, if true, fixed the date of his birth as December 24, 1877.

The personnel officer of the State Military Department, who was the custodian of the records of that department, produced the original muster-in-roll of the Second Arkansas Volunteer Infantry of 1898 showing enlistments in the Spanish-American War. This record stated that Dr. Ponder had enlisted May 19, 1898, when he stated his age to be 19 years. According to this record, he was born December 24, 1878, as found by the court.

There is another incident of even greater persuasiveness. On January 5, 1920, Dr. Ponder executed an application for a policy with a company which subsequently merged with the Hercules Life Insurance Company, in which he stated the date of his birth to be December 24, 1880. Later, and on July 5, 1926, he executed another application to the same company for an additional policy, in the application for which he stated the date of his birth to be December 24, 1879. Upon the receipt of the second application, the company called Dr. Ponder's attention to the discrepancy between the two applications in regard to his age. In response, Dr. Ponder wrote a letter to the company in which he stated that the correct date of his birth was that stated in the policy which he then held, to-wit, December 24, 1880. Thereafter the Hercules Company had Dr. Ponder execute an amendment to his application on August 11, 1926, in

which he changed the application to read: "Date of birth, December 24, 1880," and the premium rate was changed accordingly.

On the next day, August 12, 1926, Dr. Ponder executed his application for the first policy with appellee insurance company in which he stated the date of his birth to be December 24, 1882.

In his written opinion the trial court said that these were ancient documents, properly accounted for, which had not been questioned. As a man grows older each year, he might easily be confused as to his age at any particular time; but the date of his birth remains constant.

In view of this testimony, we are unable to say that the finding of the court—that deceased was born in 1878, and not in 1882—is not sufficiently supported by the testimony; notwithstanding the court found that "From a careful study of the record and the testimony, the court finds there has been no fraud perpetrated, therefore, it leaves only the matter of mistake to be considered by this court."

This finding immediately follows the statement in the opinion that "Plaintiff has advanced two theories, one of which is fraud upon the part of the defendant in filing the proof of death and claims for the said sum payable under the policies in which the defendant gave the birthday of the deceased as 1882, which corresponds to the age given by the deceased at the time said policies were taken out by the deceased."

It appears obvious, therefore, that, in finding there was no fraud, the court was referring to the proof of death, and this finding does not conflict with the definite finding that the insured was born on a date not later than December 24, 1878.

If other testimony were required to make it appear that this finding of fact is supported by substantial testimony, it may be added that the Hercules Company refused payment of the full face value of the policies which it had issued, on account of the misstatement of the insured's age in the applications upon which it had issued

policies of insurance. It was against so much of the insurance money as the Hercules Company admitted owing that the original garnishment, referred to in the first opinion in this case, was levied. The policies issued by the Hercules Company were later paid for as much insurance as the premiums would have paid for at the insured's correct age, which was calculated upon the assumption that he was born in 1878, the date which the court below here found to be the year in which the insured was born.

(b). Upon the second defense, it may be answered that the payment of the insurance was made under a misapprehension of fact, induced by the false statements as to the insured's age herein recited.

In the case of *Northcross* v. *Miller,* 184 Ark. 463, 43 S. W. 2d 734, which cited earlier cases to the same effect, Chief Justice HART said: "The general rule is that money paid under a mistake of fact may be recovered."

(c). The insistence is urged that the false statements as to the age of the insured cannot affect the right of the beneficiary to collect the insurance, and the following cases are cited to support that contention: *Lincoln Reserve Life Ins. Co.* v. *Smith,* 134 Ark. 245, 203 S. W. 698; *Brotherhood Railroad Trainmen* v. *Merideth,* 146 Ark. 140, 225 S. W. 337; *Missouri State Life Ins. Co.* v. *Witt,* 161 Ark. 148, 256 S. W. 46, and *Ozark Mut. Life Ins. Co.* v. *Dillard,* 169 Ark. 136, 273 S. W. 378.

In the first of these cases it was held (to quote a headnote) that "Where an insured made an innocent misstatement in his application as to his age, the beneficiary may recover the full face of the policy, in the absence of a showing as to what insurance could be purchased at the correct age, with the premium actually paid in."

The second case was a contest between two women, each of whom claimed the insurance upon the ground that she was the wife of the insured. A third person had testified that the insured had told him that he had mar-

ried a second time without obtaining a divorce from his wife. Upon this issue it was there held (to quote a headnote) that "Where no change in the beneficiary designated in a benefit certificate is made, the interest of the beneficiary becomes vested, and cannot be defeated by proof of statements of the insured, whether the insured reserved the right to change the beneficiary or not."

In the third case a headnote reads that "A statement by insured as to his physical condition, made a month after the policy sued on was issued, was inadmissible against the beneficiary, the policy constituting a contract between the company and the beneficiary."

The fourth and last case was one by an insured to recover assessments paid on two policies, or membership certificates, issued by an insurance company. It was there held (to quote a headnote) that "Where a benefit certificate is canceled for misstatement in the application as to the age of the insured, the assessments paid may be recovered, if the misstatement was made in good faith and without fraud."

The cases cited do not, therefore, support the contention made.

Here, the statements which induced the issuance of the policies as to the age of the insured were made before any interest had vested in Mrs. Ponder. However, the only interest which Mrs. Ponder has in these policies is the right to collect the amount of the insurance which the insured purchased with the premiums paid, based upon his correct age. The insurance contracts so expressly provide, and there is no attempt to deprive her of any benefits for which the insurance contracts do provide. *Supreme Conclave Knights of Damon* v. *O'Connel,* 107 Ga. 97, 32 S. E. 946; *Stiegler* v. *Eureka Life Ins. Co.,* 146 Md. 629, 127 Atl. 397; *Mutual Life Ins. Co. of N. Y.* v. *Blodgett,* 8 Tex. Civ. App. 45, 27 S. W. 286; *Hews* v. *Equitable Life Assurance Society,* 143 Fed. 850.

The fourth defense is that the incontestable clause, above copied, operates to foreclose and conclude any inquiry as to the correct age of the insured, and the case

of *Mutual Life Ins. Co.* v. *New,* 125 La. 41, 51 So. 61, 27 L. R. A., N. S. 431, 136 Am. St. Rep. 326, is cited to support that contention. In that case a headnote reads as follows: "Where there is a clause in a policy of insurance providing that if the age of the insured has been misstated the benefit will be adjusted equitably upon ascertainment of that fact, and there is another clause providing that after two years the policy will be incontestable, if the premiums have been paid, both clauses are general, and one does not control the other."

In a later case—*Taylor* v. *Unity Industrial Ins. Co.,* 147 So. 91—in an opinion by the Court of Appeals of Louisiana, which had before it a policy containing the same two year incontestable clause, with another clause providing that "If the age of the insured has been misstated, the amount payable under this policy shall be such amount as the premium paid would have purchased at the correct age of the insured, and if the correct age exceeds the age limit at which the company accepts members, then the only liability of the company will be a refund of premiums paid," the court there said: "The incontestability clause does not affect this condition. *Mutual Life Ins. Co.* v. *New,* 125 La. 41, 51 So. 61, 27 L. R. A., N. S., 434, 136 Am. St. Rep. 326."

This later case distinguishes the effect of the difference between the incontestable clauses appearing in the two policies, and gives effect to the provision of the clause set out in the second opinion to the effect that, notwithstanding the incontestable clause, there appearing, the insured may recover only so much of the insurance as the premiums would have paid for at the correct age of the insured.

This question was presented and the authorities were reviewed by the Supreme Court of Mississippi in the case of *Messina* v. *New York Life Ins. Co.,* 173 Miss. 376, 161 So. 462. It was there said: "It is the principal contention of the appellant beneficiaries that the insurer is precluded from any question as to the face amount of the policy because of the incontestable clause above quoted. In this we think appellants are mistaken. In con-

struing any contract, effect must be given to every provision in it, *Harris* v. *Townsend,* 101 Miss. 590, 58 So. 529, unless the parts are in unavoidable conflict. *Home Mutual Fire Ins. Co.* v. *Pittman,* 111 Miss. 420, 71 So. 739. There is no conflict between the incontestable clause and the clause providing for an adjustment of the ultimate amount payable, on the basis of the true age of the insured. As said by CARDOZO, C. J., in *Metropolitan Life Ins. Co.* v. *Conway,* 252 N. Y. 449, 169 N. E. 642, the incontestable clause precludes an insurance company from questioning the validity of the contract in its inception or from contending that it has thereafter become invalid by reason of a condition broken. The incontestable provision, such as in this case, has no other or further effect. It cannot be used as a means of rewriting the contract by striking out of it other valid and unambiguous provisions governing the ultimate amount payable under the policy. The provision for adjustment according to the true age gives the beneficiaries everything that has actually been paid for, whether more or less than the principal amount named on the face of the policy, and is, therefore, just to them and to the insurer, as well as to policyholders generally. Such an adjustment is not a contest of the policy, but is a carrying out of its precise terms. *Murphy* v. *Travelers' Ins. Co.,* 134 Misc. 238, 234 N. Y. S. 278; *Sipp* v. *Philadelphia Life Ins. Co.,* 293 Pa. 292, 142 A. 221; *North American Union* v. *Trenner,* 138 Ill. App. 586; and compare *Lavender* v. *Volunteer State Life Ins. Co.,* 171 Miss. 169, 157 So. 101.''

Here, there is no contest of the validity of the policy. Its validity is conceded. The question is, For what amount of insurance does the policy provide? and it does not involve a contest of the validity of the policy to ascertain that amount. The company proposes to pay the amount of insurance which it agreed to pay upon the death of the insured, this being the amount of insurance (which might be more or less than the face of the policy) which was purchased with the premiums paid, at the true age of the insured. The incontestable clause

entitles the beneficiary to this amount of money, but it does not entitle her to any more.

The cases of *Missouri State Life Ins. Co.* v. *Cranford,* 161 Ark. 602, 257 S. W. 66, 31 A. L. R. 93; *Standard Life Ins. Co.* v. *Robbs,* 177 Ark. 275, 6 S. W. 2d 520; and *Fore* v. *New York Life Ins. Co.,* 180 Ark. 536, 22 S. W. 2d 401, 67 A. L. R. 1358, when read in the light of the facts to which they apply, are not to the contrary effect. In each of those cases liability was denied on the policies sued on, but it was held that the incontestable clause in each case prevented the assertion of that defense. Here, as we have said, and again repeat, there is no denial of liability.

We conclude, therefore, that the judgment of the court below is correct, and it is, therefore, affirmed.

HUMPHREYS and MEHAFFY, JJ., dissent.